IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TITLEMAX OF DELAWARE, INC., <br> TITLEMAX OF OHIO, INC., <br> TITLEMAX OF VIRGINIA, INC., and <br> TMX FINANCE OF VIRGINIA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ROBIN L. WEISSMANN, <br><br> Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : C. A. No. 17-1325-MPT <br> : <br> : <br> : <br> : |

## MEMORANDUM OPINION

This action concerns the legality of an Investigative Subpoena for the Production of Documents and Information (the "Subpoena")[1] issued by the Commonwealth of Pennsylvania Department of Banking and Securities pursuant to Pennsylvania state law that is currently being litigated by these same parties in a Pennsylvania state court. TitleMax of Delaware, Inc. d/b/a TitleMax ("TM DE"), TitleMax of Ohio, Inc. d/b/a TitleMax ("TM OH"), TitleMax of Virginia, Inc., d/b/a TitleMax ("TM VA"), and TMX Finance of Virginia, Inc. ("TMX VA") (collectively, "TitleMax") brought this action against Robin L. Weissmann (the "Secretary"), in her official capacity as Secretary of the Pennsylvania Department of Banking and Securities (the "Department").[2]

TitleMax's two-count Amended Complaint alleges the Subpoena attempts to regulate commercial activity that takes place wholly outside of the Commonwealth of Pennsylvania in violation of the Commerce Clause and Due Process Clause of the United States Constitution.[3] Count One requests injunctive relief pursuant to 42 U.S.C.

---

[1] D.I. 44-1, Ex. 1. The subpoena was issued pursuant to Section 401.F of the Department of Banking and Securities Code, 71 P.S. § 733-401.F; Section 12 of the CDCA, 7 P.S. § 6212; and Section 506 of the LIPL, 41 P.S. § 506. *Id.*
[2] D.I. 5 (Amended Complaint).
[3] D.I. 5 ¶ 1 (citing U.S. Const. I, § 8, cl. 3 & amend. XIV, § 1).

§ 1983 and *Ex parte Young*,[4] based on the Commerce Clause prohibition of the Department's application of the Pennsylvania Loan Interest and Protection Law ("LIPL") and Consumer Discount Company Act ("CDCA") to TitleMax because it operates "wholly outside" of Pennsylvania.[5] Count One also alleges the Due Process Clause similarly prevents application of the LIPL and CDCA because TitleMax does not have sufficient "minimum contacts" with the state.[6] Count Two requests a judgment under 28 U.S.C. § 2201 that the Secretary has no authority to enforce against TitleMax the LIPL, CDCA, or any other laws or regulations the Department is empowered to administer and enforce, because extraterritorial application of these laws would violate the Commerce Clause and Due Process Clause.[7]

Presently before the court are the parties' cross-motions for summary judgment.[8] For the reasons discussed below, TitleMax's motion is granted, and the Department's motion is denied.

I. BACKGROUND FACTS[9]

Each TitleMax entity is licensed in their respective states and incorporated in Delaware.[10] Each provided loans for personal, family, and household purposes that are

---

[4] 209 U.S. 123 (1908).
[5] D.I. 5 ¶¶ 48-54.
[6] *Id.*
[7] D.I. 5 ¶¶ 55-56.
[8] D.I. 45 (TitleMax); D.I. 48 (Department). Briefing is found at D.I. 46 (TitleMax opening brief); D.I. 49 (Department opening brief); D.I. 50 (TitleMax brief in opposition to D.I. 48 and reply in support of D.I. 45); and D.I. 51 (Department reply brief in support of D.I. 48). TitleMax also filed a Motion for Leave to File Supplemental Response in Opposition to Defendant's Motion for Summary Judgment, D.I. 53 (Motion for Leave), which the Department opposes. *See* D.I. 54. For the reasons discussed below, the court grants TitleMax's Motion for Leave. Briefing on the motion is found at D.I. 53 (TitleMax opening brief) and D.I. 54 (Department opposition brief).
[9] The Background Facts are taken from the parties' Joint Stipulation of Facts. D.I. 44.
[10] D.I. 44 ¶¶ 1-4.

secured by the borrower's motor vehicle.[11]  The Department served the Subpoena on August 22, 2017.[12]  On September 18, 2017, TitleMax commenced this action in this court.[13]  The Department filed a petition in the Commonwealth Court of Pennsylvania (the "State Commonwealth Court") to enforce the Subpoena (the "Petition") on September 22, 2017.[14]  TitleMax removed the Department's Petition to the United States District Court for the Middle District of Pennsylvania (the "Middle District of Pennsylvania") on November 16, 2017.[15]  On December 15, 2017, the Department filed a motion to remand the Middle District of Pennsylvania action to the State Commonwealth Court.[16]  The parties subsequently agreed to several extensions and a stay of both cases pending their attempts to resolve the matters amicably.[17]  On June 10, 2019, the parties informed the Middle District of Pennsylvania that they were unable to reach a resolution.[18]  On January 10, 2020, the Middle District of Pennsylvania issued a Memorandum Opinion and entered an Order granting the Department's motion to remand.[19]  The Department's Petition is now pending in the State Commonwealth Court.[20]

## II. GOVERNING LAW

A grant of summary judgment pursuant to FED. R. CIV. P. 56 is appropriate if materials in the record, such as depositions, documents, electronically stored

---

[11] *Id.*  Each entity provided the loans directly, expect TM OH which connected borrowers with a third-party lender who provided the loans.  *Id.* ¶ 3.
[12] *Id.* ¶ 6.
[13] *Id.* ¶ 7.
[14] *Id.* ¶ 8.
[15] *Id.* ¶ 9.
[16] *Id.* ¶ 10.
[17] *Id.* ¶ 11.
[18] *Id.* ¶ 12.
[19] *Id.* ¶ 13.
[20] *Id.* ¶ 14.

information, admissions, interrogatory answers, affidavits and other like evidence show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[21] The movant bears the burden of establishing the lack of a genuinely disputed material fact by demonstrating "that there is an absence of evidence to support the nonmoving party's case."[22] "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[23] "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."[24]

This standard does not change merely because there are cross-motions for summary judgment.[25] Cross-motions for summary judgment:

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.[26]

"The filing of cross-motions for summary judgment does not require the court to grant summary judgment for either party."[27]

---

[21] FED. R. CIV. P. 56 (a) and (c).
[22] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).
[23] *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir.1995) (internal citations omitted).
[24] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted).
[25] *Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).
[26] *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).
[27] *Krupa v. New Castle County*, 732 F. Supp. 497, 505 (D. Del. 1990).

### III. DISCUSSION

Pursuant to the court's Scheduling Order, TitleMax and the Department filed cross-motions for summary judgment on May 1 and May 4, respectively.[28] On June 23, 2020, TitleMax filed its Motion for Leave, essentially a motion to file a sur-reply brief to the Department's Reply Brief.[29]

The parties' summary judgment motions present competing arguments over whether the court should abstain from deciding the merits of TitleMax's constitutional claims as articulated in the United States Supreme Court's decision in *Younger v. Harris*, 401 U.S. 37 (1971) ("*Younger* abstention"). TitleMax seeks to file a sur-reply brief to address the apparent change the Department's argument regarding the basis of *Younger* abstention.[30] TitleMax asserts that the Department's initial *Younger* abstention argument is based on the subpoena enforcement petition pending in the State Commonwealth Court, but thereafter in the Department's Reply Brief, D.I. 51, the asserted basis for *Younger* abstention now rests on a hypothetical enforcement action by the Department against TitleMax.[31] This court has previously granted leave to file a sur-reply when the proposed brief "responds to new evidence, facts, or arguments" raised in an opposing party's reply.[32]

Here, the Department changed the basis upon which it argues abstention under *Younger* is appropriate. In its combined Opening and Answering Brief, the Department argues the elements for *Younger* abstention are satisfied because "the pending

---

[28] D.I. 45; D.I. 48.
[29] D.I. 53. Attached to the Motion for Leave is TitleMax's proposed sur-reply brief. *See* D.I. 53-2.
[30] D.I. 53 at 1-2.
[31] *Id*. at 2.
[32] *Belden Techs., Inc. v. LS Corp.*, 2010 U.S. Dist. LEXIS 70424, at *3 (D. Del. July 14, 2010).

Commonwealth Court proceeding implicates Pennsylvania's important interest in assessing a potential violation of its fundamental policy against high interest rates on consumer loans," and therefore, "given Pennsylvania's significant interest in the matter pending in the Commonwealth Court, the second *Younger* element is satisfied."[33] In its Reply Brief, however, the Department bases its argument for *Younger* abstention on a hypothetical enforcement action mentioned in TitleMax's Reply Brief that would, if brought to fruition, focus on an enforcement action against TitleMax, alleging that their loans to Pennsylvanians violate Pennsylvania state law.[34] TitleMax is thus correct that the Department's abstention argument in their Reply Brief is no longer based on the pending State Commonwealth Court proceeding as it argued in its combined Opening and Answering Brief.

Because the Department substantially changed its original position by raising a new and different argument, the court grants TitleMax's Motion for Leave[35] and will consider its arguments presented in the proposed sur-reply brief attached thereto[36] in the court's analysis of the parties' cross-motions for summary judgement.

Both TitleMax and the Department seek judgment in their respective favor. TitleMax argues for summary judgment based on the Department's threatened extraterritorial imposition of Pennsylvania laws on TitleMax's operations, which violates the Commerce Clause of the United States Constitution.[37] It specifically maintains that: (1) the Commerce Clause's extraterritoriality principle prohibits regulation of out-of-state activity; (2) application of the extraterritoriality principle focuses on where the

---

[33] D.I. 49 at 15.
[34] D.I. 51.
[35] D.I. 53.
[36] D.I. 53-2.
[37] D.I. 46 at 1.

commercial activity takes place; (3) application of the extraterritoriality principle in factually similar cases has determined out of state regulation unconstitutional; and (4) *Midwest Title* and the extraterritoriality principle prohibit the Secretary's attempted regulation of out of state activities.[38]  In its sur-reply brief, TitleMax also contends that *Younger* abstention is not applicable because the Department's petition in the State Commonwealth Court is not the type of proceeding that would allow this court to abstain pursuant to the criteria set forth in *Sprint*, and the Department's threatened enforcement action against TitleMax cannot be a basis for *Younger* abstention.[39]  TitleMax further asserts that *Younger* abstention is inappropriate because the Department voluntarily submitted to this court's jurisdiction.

      The Department argues the court should apply the *Younger* abstention doctrine and dismiss this action because:  there is a pending state court proceeding that is judicial in nature; the State Commonwealth Court proceeding implicates important state interests; and TitleMax can raise the same arguments in the state court action.[40]  The Department also contends it is entitled to judgment in its favor because the undisputed facts purportedly show it has not violated the Commerce Clause because:  the Department does not seek to apply LIPL or CDCA to TitleMax; and the LIPL and CDCA do not violate the dormant commerce clause because neither discriminate against out-of-state businesses, each are consistent with Supreme Court precedent, and TitleMax's reliance on *Midwest Title* is misplaced.[41]  Lastly, the Department maintains the

---

[38] *Id*. at 2 (citing *Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660 (7th Cir. 2010)).
[39] D.I. 53-2 at 4 (citing *Sprint Commc'ns, Inc. v. Jacobs,* 571 U.S. 69, 70 (2013)).
[40] D.I. 49 at 9-10.
[41] *Id.* at 12-18.

7

undisputed facts show that TitleMax has sufficient minimum contracts with Pennsylvania to satisfy the Due Process Clause.[42]

Under *Sprint*, abstention under *Younger* is an exception, not the rule, and is appropriate when there are one of three exceptional circumstances present to justify a federal court's refusal to decide a case in deference to the States:  (1) hearing the case in federal court would intrude on an ongoing state criminal prosecution; (2) the case involves a state civil enforcement proceeding "akin to a criminal prosecution in important respects"; or (3) hearing the case in federal court would interfere with "pending civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions."[43]  The Supreme Court recognized that the types of proceedings covered under the second *Sprint* circumstance are often "initiated by the federal plaintiff . . . for some wrongful act[,]" and "often culminate in the filing of a formal complaint or charges."[44]  The Third Circuit further clarified that to be "akin to a criminal prosecution in important respects," a matter must be "quasi-criminal" in nature, meaning that it would likely have a parallel criminal statute.[45]

The Department asserts that the enforcement proceeding TitleMax seeks to enjoin falls under the second *Sprint* category, because the Third Circuit has held that Pennsylvania's "fundamental policy" in applying its usury laws is quasi-criminal in nature.[46]  However, TitleMax is not seeking to enjoin a state proceeding on the enforcement of Pennsylvania's usury laws; rather, it seeks a determination regarding

---

[42] *Id*. at 20.
[43] *Sprint,* 571 U.S. at 70.
[44] *Id*. at 79.
[45] *Acra Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 138 (3d Cir. 2014).
[46] D.I. 51 at 6.

the authority of the Department to issue the disputed Subpoena.[47] TitleMax correctly argues that *Younger* abstention cannot be based on a state proceeding that is merely threatened and not currently pending.[48] The subpoena matter pending in the State Commonwealth Court is not a criminal proceeding, and does not have any of the characteristics of a "quasi-criminal" state proceeding. Nor would the pending state proceeding being heard in federal court interfere with any important judicial function of the State Commonwealth Court. Given that *Younger* abstention would not be appropriate under any of the three exceptional circumstances set forth in *Sprint*, the parties' arguments regarding any purported waiver by the Department when it voluntarily submitted to this court's jurisdiction need not be addressed. Therefore, the Department's motion for summary judgment is denied.[49]

TitleMax asserts the Department's actions violate the extraterritoriality aspect of the Commerce Clause by attempting to impose Pennsylvania's laws on its operations.[50] Alternatively, the Department argues that no violation of the Commerce Clause occurred because there are no broad extraterritorial principles that would trigger such a violation.[51]

There are multiple avenues whereby the Commerce Clause may be violated. The Department is correct that laws discriminatorily applied to impact in-state and out-of-state lenders differently violate the principles of the Commerce Clause.[52] However, the Department's assertion that discriminatory application of the law is "the only relevant

---

[47] D.I. 50 at 5.
[48] D.I. 53-2 at 4 (quoting *Malhan v. Sec'y United States Dep't of State*, 938 F.3d 453, 464 (3d Cir. 2019)).
[49]
[50] D.I. 50.
[51] D.I. 51.
[52] *Id*. at 8.

inquiry" in a Commerce Clause analysis is misplaced.[53] The extraterritoriality principal on which TitleMax relies is recognized by the Supreme Court and multiple circuits. The Supreme Court has found that the Commerce Clause "precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects in the state" and a state law which "directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature."[54] In an extraterritoriality analysis, the "critical inquiry is whether the practical effect of the regulation is to control conduct beyond the boundaries of the state."[55] Moreover, the Third Circuit recognized that courts are authorized to invalidate state regulations "when their impact is so great that their practical effect . . . is to control conduct beyond the boundaries of the state."[56] In a case almost factually identical to the present matter, *Midwest Title*, the Seventh Circuit held the extraterritoriality principle should focus on where the transaction the state seeks to regulate takes place.[57]

Applying the *Midwest Title* standard, Pennsylvania is attempting to regulate transactions that occur completely outside its jurisdiction. In *Midwest Title*, loan agreements with Indiana residents made and executed in Illinois constituted activity "wholly inside" Illinois, thereby making it illegal under the Commerce Clause for Indiana to apply its state laws to those transactions.[58] Here, the loans by TitleMax to

---

[53] *Id*.
[54] *Healy v. Beer Institute*, 491 U.S. 324, 336 (1989).
[55] *Id*.
[56] *A.S. Goldmen & Co. v. N.J. Bureau of Secs.*, 163 F.3d 780, 786 (3d Cir. 1999).
[57] *Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660 (7th Cir. 2010).
[58] *Id*.

Pennsylvania residents are completely made and executed outside Pennsylvania and inside TitleMax locations in Delaware, Ohio, or Virginia.[59] To secure a loan from TitleMax, Pennsylvania residents must travel to one of these states having TitleMax locations.[60] The loans are made and executed exclusively at those locations outside Pennsylvania, and any contact with Pennsylvania, such as phone calls, are purely incidental to these transactions.[61] Applying the proper standard, the Department's attempt to apply its usury laws to the loans issued by TitleMax violate the Commerce Clause. In light of this finding, the parties' other arguments need not be addressed. Therefore, TitleMax's motion for summary judgment is granted and the Department's motion for summary judgment is denied.

## V.    CONCLUSION

For the reasons discussed herein:

1. TitleMax's Motion for Leave (D.I. 53) is GRANTED;

2. TitleMax's Motion for Summary Judgment (D.I. 45) is GRANTED; and

3. The Department's Motion for Summary Judgment (D.I. 48) is DENIED.

December 7, 2020                              /s/ Mary Pat Thynge
                                              Chief U.S. Magistrate Judge

---

[59] D.I. 46 at 5.
[60] *Id*.
[61] *Id*. at 6.